IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Lenny M. Chapman and<br>Tracy M. Chapman, | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | **SUPPLEMENTAL ORDER RE**<br>**MOTION TO COMPEL DISCOVERY** |
| Hiland Operating, LLC, a Foreign<br>Company, Hiland Partners GP Holdings,<br>LLC, a Foreign Company, and Hiland<br>Partners LP, a Foreign Partnership, | )<br>)<br>)<br>)<br>) | |
| | ) | Case No. 1:13-cv-052 |
| Defendants and<br>Third-Party Plaintiff<br>(Hiland Operating, LLC) | )<br>)<br>)<br>) | |
| vs. | )<br>) | |
| Missouri Basin Well Service, Inc., and<br>B&B Heavy Haul, LLC, | )<br>)<br>) | |
| Third-Party Defendants. | ) | |

## I. BACKGROUND

Plaintiff Lenny Chapman ("Chapman") was an employee of third-party defendant B&B Heavy Haul, LLC ("B&B") on October 19, 2011, when he was severely burned in a flash fire resulting from an explosion at a natural gas processing facility in McKenzie County, North Dakota, known as the Watford City Gas Plant, owned and operated by one or more of the related defendants (collectively "Hiland").

On October 18, 2011, Hiland contacted third-party defendant Missouri Basin Well Service to have water removed from two condensate tanks at the Watford City Gas Plant. B&B was

dispatched for that purpose and Chapman, the driver if one its tanker trucks, traveled to the Watford City Gas Plant arriving shortly after midnight during the early morning hours of October 19, 2011. Upon his arrival, James Olson, one of Hiland's plant operators, directed Chapman to the condensate tanks and assisted in the positioning of his truck near the east condensate tank.

After Chapman's truck was connected to the loading facility but before any water was unloaded, condensate containing petroleum overflowed from the top of the condensate tank. Upon observing this, Olson notified the control room, told Chapman he better shut off his truck, and took off running. At that point, there was an explosion and flash fire that engulfed Chapman. Chapman survived but, according to the complaint:

> Mr. Chapman was horribly burned, including burning to his face, head, hands, chest, back, and legs. Since that time, he has had more than ten surgical procedures that included debridement, skin grafts, the use of artificial skin, the use of cadaver skin, surgeries to extend the opening of his mouth, surgeries to his eyes, surgeries to remove webbing from his hands, and other surgeries and medical procedures. He is permanently disfigured and permanently disabled.

At the time of the accident, the only persons at the gas plant were Chapman, Olson, and two other Hiland plant operators. There is no indication that Chapman exerted any control over the operation of Hiland's condensate tanks or other processes such as that he would have caused the condensate tank to overflow.

In their answers, the Hiland defendants have denied any negligence, fault, and liability. Rather, they contend it was Chapman who was negligent and that he assumed the risk of what happened to him as result of his operating his tanker truck. In addition, defendants also contend that unnamed persons or entities over whom Hiland had no control caused Chapman's injuries.

The net result of the Hiland's denials of negligence and other fault, as well as its own allegations of fault on the part of Chapman and unknown persons or entities, is to put Chapman in the position of attempting to prove what happened with respect to Hiland's complex processes and equipment that caused the condensate tank to overflow. As discussed later, this factors into the court's decision with respect to the discovery requests that are now at issue.

On December, 17, 2013, the court held a hearing to decide a number of discovery disputes. On December 26, 2013, the court issued an order summarizing the rulings. In the order, the court stated it was reserving ruling on plaintiffs' document requests nos 44-45 requesting the production of witness statements taken by defendants or their agents as well as any incident or investigation reports. Defendants had objected to these requests claiming work product and attorney-client privileges. The court directed that the disputed material be submitted to the court *in camera* for review and permitted the parties to submit additional information with the respect to the circumstances surrounding the generation of the disputed material as well as supplemental briefs.

## II.     GOVERNING LAW

Hiland's claims of attorney-client privilege are governed by state law, which in this case is N.D. R. Evid. 502, and its claims of work product are governed by federal law. E.g., Baker v. General Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) ("In this diversity case, we apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims."). The party asserting the attorney-client privilege or work product doctrine bears the burden of demonstrating its applicability. See, e.g., PepsiCo, Inc. v. Baird, Kurtz & Dobson, LLP, 305 F.3d 813, 817 (8th Cir .2002) (work product); State v. Copeland, 448 N.W.2d 611, 615 (N.D. 1989) (attorney-client privilege).

The *sine qua non* of a claim of attorney-client privilege under N.D. R. Evid. 502 is a confidential "communication" that is usually (but not always) between the attorney and client and that is made for the purpose of facilitating the giving of legal advice. Since, for the most part, Hiland has not demonstrated that the investigation material in question involves a confidential "communication," most of the court's focus will be upon Hiland's claim of work product.

The scope of the work-product doctrine for civil cases is governed largely by Fed. R. Civ. P. 26(b)(3), which reads as follows:

> **(3) *Trial Preparation: Materials*.**
> **(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> >   **(i)** they are otherwise discoverable under Rule 26(b)(1); and
> >   **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> **(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.
> **(C)** *Previous Statement*. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:
> >   **(i)** a written statement that the person has signed or otherwise adopted or approved; or
> >   **(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

These provisions are slightly more expansive than the initial formulation of the work-product doctrine in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), which focused upon protecting the thought-

processes and theories of a party's attorney from discovery directed to the "work product of the lawyer," including "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs," id. at 511, in that the protections against disclosure under Rule 26(b)(3) extend also to material prepared by the party as well as the party's other representatives. See generally Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine pp. 793-97 (5th ed. 2007) ("Epstein").

Nevertheless, what remains of core concern is the protection of the mental impressions, conclusions, opinions, or legal theories of a party's attorney. Under subparagraph (B) of Rule 26(b)(3) and the cases applying the work-product doctrine, the mental thought-processes, opinions, and theories of counsel are entitled to greater protection and remain virtually inviolate. See generally Epstein, supra. In fact, the Eighth Circuit expressly distinguishes between "ordinary work product" and "opinion work product." E.g., Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000). The former includes raw factual information, and the latter is that which reflects "counsel's mental impressions, conclusions, opinions or legal theories." Id. "Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. See Fed.R.Civ.P. 26(b)(3). In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." Id.; see generally Epstein, supra.

To qualify for work-product protection, the material must have been prepared in anticipation of litigation. The test, at least in the Eighth Circuit, was expressed in Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir. 1987) ("Simon") where the court stated:

5

Our determination of whether the documents were prepared in anticipation of litigation is clearly a factual determination:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 198-99 (1970) (footnotes omitted); see Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir.1977), on rehearing, 572 F.2d 606 (8th Cir. 1978) (en banc); The Work Product Doctrine, 68 Cornell L.Rev. 760, 844-48 (1983). The advisory committee's notes to Rule 26(b)(3) affirm the validity of the Wright and Miller test: "Materials assembled in the ordinary course of business * * * * or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Fed.R.Civ.P. 26(b)(3) advisory committee notes.

Id. at 401.

With these general principles in mind, the court turns to the document requests that are the subject to the motion to compel.

### III. DISCUSSION

#### A. Document Request No. 45

##### 1. Introduction

Plaintiffs' Request for Production of Documents No. 45 read as follows:

**REQUEST NO. 45** Please produce all reports, incident reports, letters, emails, notes, memoranda, or other documents:
(a) That mention, relate to, or discuss any investigation undertaken of the explosion;
(b) That mention, relate to, or discuss any examination, inspection, or assessment of the B & B truck or in the B & B trailer;
(c) That mention, relate to, or discuss any examination, inspection, or assessment of the west tank, the east tank, or any of their hatches, valves, or appurtenances;
(d) That mention, relate to, or discuss any examination, inspection, or assessment of any switches, monitors, or valves to be used to control or

monitor any gas or liquid products that could be allowed to enter either of the tanks;
(e) That contain - in whole or in part - any discussion regarding any cause or potential cause of the explosion;
(f) That contain any discussion of the events before or after the explosion; or,
(g) That contain any discussion of Lenny M. Chapman or any injuries suffered by Lenny M. Chapman as a consequence of the explosion.

Hiland responded to this request stating the following:

> **RESPONSE TO REQUEST NO. 45:** This Defendant objects to Request No. 45 as it is overly broad, unduly burdensome, vague, ambiguous, seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Further, this Request is not properly limited in time or scope. Additionally, this Request seeks information protected by the attorney client privilege, the attorney work product doctrine, as well as information prepared in anticipation of litigation and seeks confidential and proprietary information. Without waiving any objection and in a good faith effort to cooperate with discovery, Plaintiffs are referred to Defendant's privilege log.

Plaintiffs seek to compel full compliance with the document request, but focus their present arguments upon the following two items identified in Hiland's privilege log:

- An incident report marked HILAND.002995-002996 (hereinafter "Hiland Incident Investigation Report") for which Hiland claims attorney-client privilege and the work-product doctrine.

- M. Howerton Investigation File and notes marked HILAND.001188-001200 and HILAND.002800-002919 (collectively "Howerton investigation notes and file") for which Hiland claims attorney-client privilege and the work-product doctrine.

    2.    **Hiland Incident Investigation Report**

        a.    **Hiland has failed to demonstrate the report is work product**

The document numbered HILAND.002995-002996 is a two-page form report entitled "Incident Investigation Report" and bears the "Hiland Partners" logo. The form is broken down into

7

twelve sections (I through XII) that, in part, requires information regarding: (I) the date and location of the incident; (II) the impact and character of the incident; (III) the investigation team members: (IV) the weather conditions; (V) the names of individuals involved and their employers; (VI) the conditions of the work area; (VII) what each employee was doing at the time of the incident; (VIII) details of the incident; (IX) factors contributing to the incident; (X) recommendations for remedial action; (XI) details regarding any corrective action taken; and (XII) comments. Notably, there is nothing in the pre-printed form that makes reference to litigation or attorney review or consultation. In fact, the information requested by the form suggests that it is primarily for business purposes, particularly given the fields in the report requesting recommendations for corrective action and requiring details as to any followup corrective action taken.

The report as submitted to the court for *in camera* review indicates that the investigation took place on October 19, 2011 and that the lead investigator was Mike Howerton (Hiland's Director of Safety, Health and Environmental Compliance) with several other persons identified as having assisted in the investigation. The form was completed up through and including Section X, where recommendations were made for avoiding similar incidents. The only portions of the form not completed were Section XI's request for details on any followup corrective action taken and Section XII's allowance for comments. With respect to the information typed into the form, there is likewise no mention of litigation or attorney involvement, much less anything that would reflect the mental thought processes or theories of any attorney related to possible litigation. In short, there is nothing in the information included in the form that suggests it was gathered for litigation purposes. In fact,

8

it appears clear the information would have been gathered irrespective of whether litigation was contemplated.[1]

Hiland claims that its counsel (primarily Ms. Clarke) directed Hiland's investigation into the incident. While that may be true after a certain point in time, Hiland has not presented any evidence (such as affidavits sworn to under oath) that there was any attorney involvement in the October 19 investigation that is subject of the Hiland Incident Investigation Report. In fact, from the evidence that has been presented, it appears: (1) the investigation that is the subject of the Hiland Incident Investigation Report took place on October 19, 2011; (2) it was completed by Hiland personnel; and (3) that counsel for Hiland did not become involved in this matter until the next day at the earliest.[2]

Aside from contending that counsel was involved in directing the investigation, which is not accurate for the investigation that took place on October 19, 2011, Hiland argues that the Incident Investigation Report must be work product because it was prepared immediately following the accident and that litigation was likely to follow given its nature. However, as indicated by the authority cited above, the mere fact that litigation may possibly follow is not enough. Based on the findings made above regarding the purpose of the October 19, 2011 investigation and the Hiland Incident Investigation Report, the court concludes that defendants have failed to demonstrate that

---

[1] Hiland obviously had strong business reasons to conduct such an investigation given what undoubtedly is its sizeable investment in this and other like facilities and the potentially large costs that could be incurred (not only for repair and replacement, but also loss of business and profits) in the event of a catastrophic explosion, not to mention the potential for injury to its employees.

[2] Hiland appears to acknowledge as much in a footnote in its brief where it explains that it decided to produce certain witness statements given on October 19, 2011, because they were obtained prior to Hiland consulting with counsel. Moreover, Hiland was given the opportunity of providing more detailed information regarding the circumstances surrounding the creation of the material at issue in this order, but did not avail itself of that opportunity - probably because there was nothing to provide the court that would have advanced its position. However, the court can only make a decision based on the information that has been presented and, as noted earlier, the burden rests upon Hiland to demonstrate in the first instance that the material is subject to protection under the work-product doctrine or because it is attorney-client privileged.

the report marked HILAND.002995-002996 is work product.[3]  See, e.g., Simon, 816 F.2d at 401; Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1119 (7th Cir. 1983) (citations omitted) ("If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery.... [T]he distinction between whether defendant's 'in house' report was prepared in the ordinary course of business or was 'work product' in anticipation of litigation is an important one. The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product.... A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business."); Electronic Data Systems Corp. v. Steingraber, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003) (quoting Caremark, Inc. v. Affiliated Computer Serve., Inc., 195 F.R.D. 610, 614 (N.D. Ill. 2000).  Also, the court concludes that Hiland's claim of attorney-client privilege with respect that material is specious.

        b.      **Plaintiffs have demonstrated a need for the report even if it is work product**

Even if the Hiland Incident Investigation Report is work product, the court concludes that plaintiffs have met their burden of establishing sufficient need for the information contained in the report.  As noted earlier, plaintiffs face a daunting task in determining why the condensate tank overflowed and any investigation on their part will likely required hundreds of hours of time by multiple experts (likely both mechanical and chemical engineers) who are disadvantaged from the

---

[3] Also, when the investigation was commenced, Hiland did not know exactly what the outcome would be. Further, even if the investigation revealed Hiland to have been at fault, Hiland could have used the information for the purpose of deciding whether to reach an accommodation with Chapman short of litigation.  The court does not agree that litigation was necessarily imminent, much less that Hiland had reached that determination as of October 19, 2011.

outset by not having firsthand knowledge of all of the piping, valves, metering, and other equipment and processes at Hiland's plant as well as firsthand knowledge of the nature and chemical composition of the material that possibly could have found its way into the condensate tanks. Not only will this be a significant burden upon plaintiffs in the short term, it is not alleviated if they prevail. This is because expert costs are not taxable in federal court in diversity actions - at least absent the right to recover such costs being part of the substantive relief allowed as a matter of state law - which does not appear to be the case here. In reviewing the Hiland Investigation Report, there does appear to be information that would assist plaintiffs. For example, the report suggests four possible inputs that could have been the source of liquid or gases that may have caused the tanks to overflow. This would at least provide plaintiffs' experts a place to start.

In addition, the Hiland Incident Investigation Report provides information regarding the status of certain of the equipment at the time of the accident, *e.g.*, whether particular valves were open or shut and whether a particular line could have contained hydrocarbon condensate that could have pressured up upon the opening of a controlling valve and caused the tank to overflow. Obviously, plaintiffs do not have access to comparable information since they did not have the opportunity to conduct a similar investigation immediately following the accident. See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 985 (4th Cir. 1992) (quoting McDougall v. Dunn, 468 F.2d 468, 474 (4th Cir.1972) ("Statements of either the parties or witnesses taken immediately after the accident and involving a material issue in an action arising out of that accident, constitute 'unique catalysts in the search for truth' in the judicial process; and where the parties seeking their discovery was disabled from making his own investigation at the time, there is sufficient showing under the amended Rule to warrant discovery.");

Coogan v. Cornet Transp. Co., Inc., 199 F.R.D. 166, 167-68 (D.Md. 2001). Further, the gas plant and its processes are within Hiland's exclusive control and possession. Cf. Loctite Corp. v. Fel-Pro, Inc., 667 F.2d 577, 582 (7th Cir. 1981) (requiring production of test results when to duplicate the tests would require highly technical tests by experts utilizing information in the possession of the other party); Xerox Corp. v. International Business Machines Corp., 64 F.R.D. 367, 381-82 (S.D.N.Y. 1974).

In addition, one of the issues in the case may be the positioning of Chapman's truck and the report contains material that may be useful if Hiland claims the positioning of the truck was not a material consideration. Also, there is other information in the report that may be useful for impeachment purposes. See, e.g., Hickman, 329 U.S. at 512 (work-product may be discoverable where it useful for impeachment).

Finally, as noted earlier, there is nothing in the report that reflects the mental thought processes or theories of any of defendants' attorneys. In other words, the report is ordinary work product and not opinion work product of counsel.

   3.   **Howerton investigation notes and file**

      a.   **Notes from the October 19, 2011, investigation**

Defendants treat the Howerton investigation notes and file as one item in their privilege log. While it does appear that Howerton has kept and maintained a file with respect to the accident that is the subject of the litigation, it appears the material in the file was inserted a different points in time given the dates of the material. And, while the file does include some investigation material generated as a result of further investigation after counsel became involved (and in a couple of instances contains confidential communications with counsel that would fall within the attorney-

client privilege), the investigation file also includes Howerton's written notes from the October 19, 2011, investigation, which the court has concluded is not work product. Consequently, for the same reasons expressed above with respect to the Hiland Incident Investigation Report, the court concludes that Howerton's notes dated October 19, 2011, are not work product and that any claim the notes are attorney-client privileged is without merit. Further, even if the notes of the October 19 investigation constituted work product, the court concludes that plaintiffs have established a need for the material for the same reasons articulated above with respect to the Hiland Incident Investigation Report.[4] The notes from the October 19, 2011, investigation that Hiland shall produce are Hiland.001188-1199 and Hiland.002914.

### b. Photographs

The Howerton investigation file contains a number of post-accident photographs. Those that are marked Hiland.002872-2880 appear to have taken on November 10, 2011, as part of further investigation after counsel became involved and the court will presume from the circumstances that these are work product. There are four other photographs where the circumstances surrounding the taking are unclear and least two may have been taken as part of the October 19, 2011, investigation. These are marked Hiland.002882, 002884, & 002886-2887. Finally, there is an overhead aerial shot that is undated, which is marked Hiland.002919. Even if all of the photographs are work product, the court concludes for the same reasons expressed above with respect to the Hiland Incident Investigation Report and the notes from the October 19, 2011, that plaintiffs have demonstrated a

---

[4] In fact, the notes appear to include additional information documenting existing conditions. Further, James Olson (who, as already noted, was the plant operator who accompanied Chapman to the condensate tank and started opening one or more valves required to empty the east condensate tank prior to the explosion and flash) in response to questions from plaintiffs' counsel during his deposition professed to have no memory of the plant having to handle a large amount of water prior to the accident. Notably, there does appear to be a reference in the notes to Olson having possibly said something about this subject matter to Howerton on October 19, 2011.

sufficient need for the photographs. Consequently, the photographs identified above will be produced if Hiland has not already produced them.

c. **Witness statements**

The Howerton investigation file contains signed statements from (1) Michael Spradley dated October 26, 2001 (Hiland.002906 & Hiland.002918);[5] Chet Christensen dated October 19, 2011 (Hiland.002907), James Olson dated October 19, 2011 (Hiland.002908), and Josh Herman dated October 19, 2011 (Hiland.002909). After plaintiffs filed their motion to compel and just prior to the deadline for submitting supplemental information for purposes of the court's present determination, defendants provided to plaintiffs' counsel the Christensen, Olson, and Herman statements. In their brief, defendants indicated that they did so because the statements were obtained prior to involvement of counsel.

As for the Spradley statement, it does appear it was obtained after counsel became involved in the case. However, it also appears the decision to obtain a statement from him was made prior to the involvement of counsel and Hiland has provided little information about the circumstances of this particular statement in terms of how it was obtained and who obtained it. Consequently, Hiland has failed to meet its burden of demonstrating that the statement is attorney-client privileged. Further, even assuming it is work product, the court concludes that defendants have demonstrated a need for the statement for the reasons expressed above with respect to the other material ordered to be produced.[6] Consequently, it shall be produced.

---

[5] Hiland.002918 is identical to Hiland.002906, except that the latter is signed and dated.

[6] The courts are divided over whether signed or other verbatim witness statements are work product. Compare Basaldu v. Goodrich Corp., No. 4:06-cv-23, 2009 WL 1160915, **1-2 (E.D. Tenn. 2009) (concluding that witness affidavits are not work product and noting the split of authority on the issue); Murphy v. K-Mart, Corp., 259 F.R.D. 421,

14

#### d. Remaining portions of the Howerton investigation file

The remainder of the Howerton investigation file contains some material that on its face is attorney-client privileged and/or protected by the work product doctrine because it involves communications that included counsel and/or representatives of counsel. This includes letters and emails marked Hiland.002870-2871, 002892-002902. In addition, there appears to be miscellaneous notes of matters in which counsel was involved, specifically Hiland.001200 and Hiland.002917. These documents do not need not to be produced.

As for the rest of the Howerton investigation file, there appears to be nothing that is attorney-client privileged and the remaining documents would appear to be subject to disclosure upon a request directed toward the subject of the documents, including some that are subject to Doc. Request No. 45 itself. Defense counsel stated in their brief that they have disclosed the documents when their subject matter has been requested, but not as marked as having come from the Howerton investigation file, claiming that the mere assemblage of these documents by Howerton reflects upon what Hiland deemed to be significant (and, apparently, inferentially from that what is deemed significant by counsel). Defense counsel are directed to review the remaining documents in the Howerton investigation file and disclose them if they are covered by a relevant document request (including Document Request No. 45 since it goes beyond investigation reports) and have not been

---

428-432 (D.S.D. 2009) (same) with Bell v. Lackawanna County, 892 F. Supp. 2d 647, 660 (M.D. Pa. 2012) (noting the split of authority and concluding that at least the declarations drafted by attorneys for parties are work product up to the time they are used); Robinson v. City of Arkansas City, Kansas, No. 10-1431, 2012 WL 603576, *13 n. 133 (D. Kan. Feb. 24, 2012) (disagreeing with Murphy and concluding that witness statements may constitute "ordinary work product"); Intel Corp. v. VIA Technologies, Inc., 204 F.R.D. 450, 452 (N.D. Cal. 2001) (concluding that "witness statement" was work product); see also Mosley v. Alpha Oil and Gas Services, Inc., __ F. Supp. 2d __, 2013 WL 3989576, *5 n.3 (D.N.D. Aug. 2, 2013) (observing that a witness declaration in that case appeared to be work product). While the court does not have to decide this issue now, Hickman itself indicates that "interviews" and "statements" can be work product. Hickman, 329 U.S. at 497-500, 508-512. Further, the court suspects that Rule 26(b)(3) would read differently (particularly subparagraph (C)) if the Rule contemplated that witness statements are not work product.

disclosed. Further, if defendants do not want to produce them from the Howerton investigation file, they must be produced as the documents otherwise exist.

### B. Document Request No. 44

#### 1. Introduction

Plaintiffs' Request for Production of Documents No. 44 reads as follows:

**REQUEST NO. 44** Please produce all statements (whether in handwriting, printed or transcribed, or recorded by audio or electronic or video means) of any individual taken on or after October 18, 2011 that purported - in whole or in part:
(a) To discuss any events that occurred at the Hiland Gas Plant on October 18, 2011 or October 19, 2011;
(b) That mentioned or discussed any events leading up to the explosion of October 18, 2011; or
( c) That mentioned or discussed any causes or potential causes of the explosion of October 18, 2011. Please produce a copy of all such statements as well as all audio, electronic, or video recordings of such statements.

Hiland's response was as follows:

**RESPONSE TO REQUEST NO. 44:** Defendant objects to this Request to the extent it seeks information protected by the attorney client privilege, the attorney work product doctrine, and prepared in anticipation of litigation. Further, this Request is overly broad, vague, ambiguous, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving any objection and in a good faith effort to cooperate with discovery, Plaintiffs are referred to Defendant's privilege log.[7]

Plaintiff's seek full compliance with this discovery request including the production of statements identified in defendants' privilege log as follows:

1. J. Olson dated 10/19/11 and marked Hiland.000155.

2. J. Herman written statement dated 10/19/11 and marked Hiland.000156.

---

[7] It is difficult to believe that defense counsel actually read Request No. 44 before mindlessly interjecting the objections that the request was overbroad, vague, and ambiguous. It is hard to envision a more specific and directed document request. Further, even the objections of lack of relevancy or unlikelihood to lead to discoverable evidence are not a close call and are frivolous.

3. C. Christensen written statement dated 10/19/11 and marked Hiland.000157.

4. M. Spradley written statement dated 10/26/13 and marked Hiland.001318.[8]

5. S. Walch written statement undated and marked Hiland.001274.

**2. Discussion**

As discussed earlier, the statements of Olson, Herman, and Christensen are no longer at issue since they have been produced by Hiland. In addition, the court has ordered the production of the Spradley written statement as set forth above.

The document that defendants claim is a written statement of S Walch is undated and Hiland has failed to provide information regarding who took the statement, when it was taken, and the circumstance under which it was obtained. In fact, the written document does not even indicate it is from S. Walch. Based on its contents, it relates entirely to what took place on October 19, 2011.

Hiland failed to carry its burden of demonstrating that the Walch statement marked Hiland.001274 is attorney-client privileged or work product. Further, even if it was work product, plaintiffs have met their burden of demonstrating a need for the production of the statement for the same reasons articulated earlier. Consequently, it shall be produced.

**IV. ORDER**

Hiland shall forthwith make the disclosure of documents as directed above.

**IT IS SO ORDERED**.

---

[8] It appears that defendants' privilege log has erroneously indicated that Spradley's statement is dated 10/26/13. While the court has not reviewed Hiland.001318, it has reviewed a dated version of Spradley's statement provided by defendants that is dated 10/26/11.

Dated this 6th day of January, 2014.

                                                */s/ Charles S. Miller, Jr.*
                                                Charles S. Miller, Jr., Magistrate Judge
                                                United States District Court