# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Lenny M. Chapman and<br>Tracy M. Chapman, | )<br>)<br>) | |
| | ) | **ORDER GRANTING B&B** |
| | ) | **HEAVY HAUL'S MOTION FOR** |
| Plaintiffs, | ) | **PARTIAL SUMMARY JUDGMENT** |
| | ) | |
| vs. | ) | |
| | ) | |
| Hiland Partners GP Holdings, LLC,<br>a Foreign Company, Hiland Partners, LP,<br>a Foreign Partnership, and Hiland<br>Operating, LLC, a Foreign Company, | )<br>)<br>)<br>) | |
| | ) | |
| Defendants and<br>Third-Party Plaintiff,<br>(Hiland Operating, LLC) | )<br>)<br>) | Case No. 1:13-cv-052 |
| | ) | |
| vs. | ) | |
| | ) | |
| Missouri Basin Well Service, Inc.<br>and B&B Heavy Haul, LLC, | )<br>) | |
| | ) | |
| Third-Party Defendants. | ) | |

_____

Before the Court is Third-Party Defendant B&B Heavy Haul, LLC's ("B&B") motion for partial summary judgment filed on March 6, 2014. See Docket No. 120. The Plaintiffs filed a response in support of the motion on March 27, 2014. See Docket No. 123. Defendant and Third-Party Plaintiff Hiland Operating, LLC, filed a response in opposition to the motion on April 4, 2014. See Docket No. 131. Third-Party Defendant Missouri Basin Well Service, Inc., filed a response in opposition to the motion on April 7, 2014. See Docket No. 132. B&B Heavy Haul, LLC filed reply briefs on April 11, 2014. See Docket Nos. 134 and 135. For the reasons outlined below, the motion is granted.

**I.     BACKGROUND**

Hiland Operating, LLC ("Hiland") owns and operates a natural gas processing facility in McKenzie County, North Dakota, known as the Watford City Gas Plant ("gas plant"). Hiland and Missouri Basin Well Service, Inc. ("Missouri Basin") entered into a master service contract on July 23, 2008, wherein Missouri Basin agreed to perform various services for Hiland, including hauling water from the gas plant. Missouri Basin and B&B Heavy Haul, LLC ("B&B") also entered into a master service contract on May 24, 2011, in which B&B agreed to provide various services to Missouri Basin, including hauling water and other products from the gas plant. Both master service contracts contain indemnification clauses. However, the contract between Missouri Basin and B&B <u>was</u> <u>never</u> <u>signed</u> by all the parties. It is clear and undisputed that the master service contract was never signed by any representative of Missouri Basin.

Hiland contacted Missouri Basin on October 18, 2011, to have water removed from the condensate tanks located at the gas plant. Missouri Basin subsequently contacted B&B and requested it haul the water. Lenny Chapman, an employee of B&B, was dispatched to the gas plant, arriving shortly after midnight on October 19, 2011. Upon arriving, Chapman and Hiland employee James Olson began the process of connecting the condensate tank to the B&B truck Chapman was driving. A short time later an explosion occurred, injuring Chapman.

Chapman and his wife, Tracy Chapman, filed a lawsuit in federal court against Hiland Partners, LP, Hiland Partners GP Holdings, LLC, and Hiland Operating, LLC on April 26, 2013. The Plaintiffs allege negligence and loss of consortium. Hiland filed a third-party complaint against Missouri Basin and B&B on July 2, 2013. Hiland contends it is contractually entitled to indemnification and a defense from Missouri Basin and B&B. Missouri Basin has filed a cross-

claim against B&B seeking a defense and indemnification. The trial is scheduled to commence on January 26, 2015.

B&B filed a motion for partial summary judgment and contends the master service contract with Missouri Basin does not require it to indemnify Missouri Basin or Hiland for Hiland's negligence. B&B apparently admits the master service contract requires it to indemnify Hiland and/or Missouri Basin for B&B's negligence, even though a fully executed contract does not exist. B&B seeks dismissal of Hiland's third-party complaint and Missouri Basin's cross-claim.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-

moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

### III. LEGAL DISCUSSION

#### A. HILAND'S THIRD-PARTY COMPLAINT

##### 1. INDEMNITY

The first question presented by B&B's motion is whether B&B must indemnify Hiland for Hiland's own negligence based on an indemnity provision in the unsigned master service contract entered into with Missouri Basin. The Court concludes there is no legal basis for such a requirement.

Under North Dakota law, when two or more tortfeasors contribute to a plaintiff's injury, their liability is several only, unless they acted in concert. Since liability is several, a plaintiff may not recover more than the percentage of fault attributed to a single tortfeasor. Thus, if a jury attributes fault to a party the plaintiff has not sued, then the plaintiff cannot recover that portion of the judgment from the named defendants.. N.D.C.C. § 32-03.2-02. A party is only liable for its own fault, and claims for contribution among tortfeasors are generally foreclosed. Target Stores v. Automated Maint. Serv. Inc., 492 N.W.2d 899, 904 (N.D. 1992); Campbell v. BNSF Ry. Co., 756 F. Supp. 2d 1109, 1112 (D.N.D. 2010); Branum v. Petro-Hunt Corp., No. 4:09-CV-035, 2010 WL 1977963, *2 (D.N.D. March 15, 2010). In other words, absent concerted action, a non-sued tortfeasor (such as B&B or Missouri Basin) cannot be held liable for contribution to a sued tort-feasor,

4

such as Hiland. Target Stores, 492 N.W.2d at 901. As a corollary, this also means Hiland cannot be held liable for any fault attributable to B&B or Missouri Basin. It is clear from the record Hiland has not made a claim for negligence against B&B. See Docket No. 131, pp. 2 and 14. Consequently, the dispute between Hiland, Missouri Basin and B&B centers on whether, and to what extent, the master service contracts at issue impose indemnification obligations on B&B.

Indemnity contracts are subject to the same rules of contract interpretation as other contracts. Specialized Contracting, Inc. v. St. Paul Fire & Marine Ins. Co., 825 N.W.2d 872, 877 (N.D. 2012). Absent an ambiguity, the construction of a written contract is a question of law. Moen v. Meidinger, 547 N.W.2d 544, 546-47 (N.D. 1996); Schwarz v. Gierke, 788 N.W.2d 302, 307-08 (N.D. 2010). It is clear that whether an ambiguity exists in a contract is a question of law for the court to resolve. Vanderhoof v. Gravel Products, Inc., 404 N.W.2d 485, 491 (N.D. 1987). The intention of the parties must be determined from the entire instrument giving effect to all clauses. Id. An ambiguity exists when rational arguments can be made in support of opposing positions concerning the meaning of a disputed clause.

"Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." N.D.C.C. § 22-02-01. Indemnity requires one party to reimburse another party "for the discharge of a liability which, as between them, should have been discharged by the other." Olander Contracting Co. v. Gail Wachter Inv., 643 N.W.2d 29, 36 (N.D. 2002). "An indemnity agreement will not be interpreted to indemnify a party against the consequences of his own negligence unless that construction is very clearly intended." Bridston v. Dover Corp., 352 N.W.2d 194, 196 (N.D. 1984). It is well-established that indemnity provisions in non-insurance contracts which contain ambiguities are to be strictly

5

construed against the party receiving the indemnity. <u>Specialized Contracting</u>, 825 N.W.2d at 878.

The relevant provisions of paragraph six of the <u>unsigned</u> master service contract between B&B and Missouri Basin relating to indemnity provide as follows.

> Carrier agrees to indemnify, defend, and <u>save harmless</u> MBI and the Customer from <u>any and all claims</u>, demands, judgments, defense costs, or suits (including. but not limited to, claims, demands, judgments or suits for property damage, bodily injury, illness, disease, death or for loss of services, or wages or for loss of consortium or society) by Carrier or its Subcontractors or any employees (or their spouses, relatives, or dependents) of Carrier or is (sic) Subcontractors (or based on or arising out of such claims) in any way, directly or indirectly, arising out of or related to the performance of this Contract, <u>including MBI's own negligence</u>, or the use by Carrier or its employees of, or their presence on, any premises owned, operated or controlled by MBI.
>
> Carrier agrees to indemnify, defend. and <u>save harmless</u> MBI and the Customer, from and against <u>any and all claims</u>, demands, judgments, defense costs, or suits (including. but not limited to, claims. demands, judgments or suits for property damage, bodily injury, illness, death or for loss of services, wages or for loss of consortium or society) which may be brought by any person or entity against the Group or in which MBI or the Customer may be named a party defendant, in any way, directly or indirectly, arising out of or related to the performance of this Contract, <u>including MBI's own negligence</u>, or the use by Carrier or its employees of, or their presence on, any premises owned, operated or controlled by MBI.

<u>See</u> Docket No. 122-1, p. 3. (emphasis added)

The <u>unsigned</u> master service contract also required B&B to obtain insurance. The relevant provisions of paragraph four provide as follows:

> All policies (except Worker's Compensation) <u>shall include MBI and its Affiliates as additional insured</u> for liabilities arising out of the performance under this contract and shall be primary to any other insurance of MBI. Such insurance shall specifically provide that is applies separately to each insured against which claim is made or suit is brought, except with respect to the limits of the insurer's liability. All policies shall provide that all rights of subrogation against MBI and its affiliates are waived when permitted by law. Such insurance shall be primary over any coverage's maintained by the Certificate Holder. All policies must include thirty (30) days written notice of cancellation to Certificate Holder.

> The policy limits specified above are minimum requirements and not limits of liability and shall not be construed in any way MBI's acceptance of responsibility for financial liabilities in excess of such limits. Carrier shall pay all deductibles and self-insured retentions, including defense costs, applicable to the insurance.
>
> Prior to commencement of any work, contractor shall furnish MBI with Certificates of Insurance which document that all coverages and endorsements required by this article have been obtained. Carrier shall obtain renewal certificates as and when necessary and copies thereof shall be forwarded to MBI as soon as same are available and in any event prior to the expiration of the policy so renewed . These certificates shall provide that the insurer shall give thirty (30) days written notice to MBI prior to change or cancellation of any policy. In no event shall MBI's acceptance of an insurance certificate that does not comply with this paragraph constitute a waiver of any requirement of this article.

See Docket No. 122-1, p. 2. (emphasis added).

The parties apparently agree the unsigned master service contract expresses an intent that B&B indemnify Missouri Basin for B&B's negligence and Missouri Basin's own negligence. There apparently is no dispute that Hiland is a "customer" as that term is used in the master service contract.

As noted by the Eighth Circuit Court of Appeals, a review of North Dakota case law construing indemnity agreements reveals a general rule that, when a contract contains both the "hold harmless" and insurance provision language, there is little question the parties intended that the indemnitee be indemnified against the consequences of its own negligence. Myers v. ANR Pipeline Co., 959 F.2d 1443, 1448 (8th Cir. 1992) (applying reasoning articulated in *Bridston)*.

In *Bridston*, the University of North Dakota ("UND") leased an auditorium to the YMCA for a dance performance. 352 N.W.2d at 195. During rehearsal, a UND employee raised a hydraulic stage lift which caused a dancer to be injured. The dancer sued UND and others, but not the YMCA, for negligence. UND filed a third-party complaint against the YMCA alleging the lease required

the YMCA to indemnify UND. The trial court granted summary judgment to UND. The North Dakota Supreme Court affirmed the district court citing four reasons why the parties to the contract intended that UND be indemnified from its own acts of negligence. Id. at 197. First, the contract contained "save harmless" language. Second, the contract provided UND would be saved harmless "against any and all claims for loss, injury or damage" and contained no limiting or qualifying language which would exclude claims arising from UND's negligence. Third, the contract required the YMCA to obtain liability insurance listing UND as an additional insured. Lastly, the contract, when read as a whole, reflected an "unmistakable intent" that UND would be indemnified from its own negligence. Id.

In this case the unsigned master service contract provides that B&B will "save harmless" Missouri Basin "and the Customer from any and all claims." See Docket No. 122-1, p. 6. The North Dakota Supreme Court considers the "save harmless" and the "any and all claims" language to be critical to any determination of whether a contract indemnifies a party for its own negligence. Bridston, 352 N.W.2d at 197; Myers, 959 F.2d at 1446. The indemnity clause contains no language which could be construed as limiting this obligation and covers all claims related to the performance of the contract "including MBI's [Missouri Basin's] own negligence." It is notable the contract makes no mention of the customer's own negligence. However, the word "including" would seem more inclusive than limiting in nature. The Court concludes the "save harmless" language required by *Bridston* is present.

The unsigned master service contract between B&B and Missouri Basin further requires B&B to obtain liability insurance and "include MBI [Missouri Basin] and its affiliates as an additional insured." See Docket No. 122-1, p. 2. The contract makes no mention of naming

8

customers as additional insureds. The contract does not define "affiliates." However, if the word "affiliates" is given its common and widely understood meaning, it would not encompass customers. The lack of any requirement that customers be named as additional insureds is significant. See Barsness v. General Diesel & Equipment Co., Inc., 422 N.W.2d 819, 826 (N.D. 1988) (finding an indemnity clause did not require the idemnitee be indemnified for its own negligence because the indemnity clause did not require the indemnitee to be added as an additional insured); Vanderhoof, 404 N.W.2d 491-92 (finding lack of insurance requirement created ambiguity). The Court concludes the insurance requirement is lacking in this case.

Unmistakable intent is evidenced by the inclusion of both hold harmless and insurance provisions in a contract. Myers, 959 F.2d at 1448. The unsigned master service contract arguably evidences an intent that B&B indemnify Missouri Basin for Missouri Basin's own negligence. However, the same cannot be said as to B&B's obligation to Hiland because, while the "save harmless" language is present, the insurance requirement is clearly absent. This conclusion concerning a lack of clear intent as to Hiland is strengthened by the contract's clarity as to B&B's obligations to Missouri Basin. The Court concludes the <u>unsigned</u> master service contract between B&B and Missouri Basin, when read as a whole, does not evidence an unmistakable intent that B&B indemnify Hiland for Hiland's own negligence.

The Court has carefully reviewed the <u>unsigned</u> master service contract in its entirety and concludes the intent of the parties as to Hiland is unclear from the contract itself. Any ambiguity in an indemnity provision must be strictly construed against the party who seeks to be indemnified. Specialized Contracting, 825 N.W.2d at 878. While in some circumstances this lack of clarity as to the parties' intentions may present a question of fact, the parties not have drawn the Court's

attention to any extrinsic evidence which would shed light on those intentions. See Barsness, 422 N.W.2d at 826 (declining to remand and finding no indemnification was required where the parties failed to call attention to any extrinsic evidence of the parties' intent). Under these circumstances, the Court concludes as a matter of law that in accordance with the <u>unsigned</u> master service contract entered into between B&B and Missouri Basin, B&B has no legal duty or obligation to indemnify Hiland from Hiland's own negligence.

### 2. NORTH DAKOTA'S ANTI-INDEMNITY STATUTE

B&B contends that even if the unsigned master service contract were construed to require it to indemnify Hiland for Hiland's own negligence, that requirement is void under North Dakota law. The Court agrees.

The relevant portions of North Dakota's motor carrier anti-indemnity statute provide as follows:

> 2. Notwithstanding any provision of law to the contrary, any portion of a provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the promisee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the promisee is void and unenforceable to the extent that the loss or damage:
>
>> a. Occurs during the motor carrier's presence on the promisee's premises and is caused by or results from the negligent or intentional acts or omissions of the promisee;

N.D.C.C. § 22-02-10(2). The statute was enacted in 2009. No reported cases applying its provisions could be found. By its plain language, the anti-indemnification statute voids any clause in a motor carrier contract that provides indemnification to a promisee for damages arising out of the

10

promisee's negligence, if the damages occur during the carrier's presence on the promisee's property.

Hiland argues the statute does not apply because Missouri Basin, rather than Hiland, is the promisee in the unsigned master service contract. The Court disagrees. A promisee is "one to whom a promise is made." Black's Law Dictionary, 1230 (7th ed. 1999). "A binding promise . . . is the essence of a contract." Id. at 1229. It is Hiland's contention that B&B promised to indemnify Hiland in the unsigned master service contract. If the unsigned contract were found to require B&B to indemnify Hiland for Hiland's own negligence, then Hiland would clearly be a promisee. Any other construction of the statute would allow to be accomplished indirectly that which is unlawful if attempted directly. See generally Ford Motor Co. v. Abercrombie, 62 S.E.2d 209, 216 (Ga. 1950) (applying legal maxim "*quando aliquid prohibetur ex directo, prohibetur et per obliquum*" which translates as that which is prohibited directly is prohibited indirectly). The Court finds the term "promisee" as contained in Section 22-02-10 of the North Dakota Century Code is broad enough to encompass a third-party promisee.

There is no dispute the unsigned master service contract at issue is a motor carrier transportation contract. The accident occurred on Hiland's property. The Chapman's have alleged Hiland, and Hiland alone, was negligent and was the proximate cause of their resulting injuries. Indemnification for its own negligence is what Hiland claims it is owed by B&B under the terms of an <u>unsigned</u> master service contract. The Court finds as a matter of law that Section 22-02-10 of the North Dakota Century Code applies to the current scenario.

11

The Court further finds, as a matter of law, that if the <u>unsigned</u> master service contract at issue is interpreted in a manner so as to require B&B to indemnify Hiland for Hiland's own negligence, the contract is void and unenforceable under North Dakota law.

### B. <u>MISSOURI BASIN'S CROSS-CLAIM</u>

In the third-party complaint, Hiland seeks indemnification from Missouri Basin in accordance with an indemnification provision in the <u>signed</u> master service contract between Hiland and Missouri Basin. In its cross-claim, Missouri Basin seeks indemnification from B&B, under the indemnification provision of an <u>unsigned</u> master service contract, for any recovery the Chapmans may obtain from Hiland which Hiland would then seek to recover from Missouri Basin in accordance with the indemnification provision in their own master service contract.

B&B contends its master service contract does not require it to indemnify Missouri Basin for any contractually-imposed liability which Missouri Basin may have assumed in a separate contract with Hiland. B&B points to the language of its unsigned master service contract, which provides that B&B's indemnification obligation is limited to "any and all claims, demands, judgments defense costs, or suits . . . for . . . bodily injury . . . arising out of or related to the performance of" the contract. <u>See</u> Docket No. 122-1, p. 3.

Missouri Basin essentially contends that when the two master service contracts are read together they operate to pass-through to B&B any indemnification obligations Missouri Basin assumed in its contract. However, the suggestion the two master service contracts (one of which was never fully executed) should be read together under Section 9-07-07 of the North Dakota Century Code fails as a matter of law. The contracts do not involve the same parties and were

12

clearly not entered into as part of substantially one transaction. The Court notes the two master service contracts were negotiated approximately three years apart, namely, the contract between B&B and Missouri Basin was being negotiated or discussed in 2011, whereas Missouri Basin and Hiland entered into a signed master service contract in July 2008.

Missouri Basin contends the unsigned master service contract is ambiguous and incomplete and the contract must be read in light of the surrounding circumstances. Missouri Basin concludes with the observation that "the intent was not necessarily to require B&B to indemnify Missouri Basin from contractually imposed liability, but rather to indemnify Hiland from Hiland's own negligence." See Docket No. 132, p. 11. However, Missouri Basin offers no affidavits or deposition testimony to support this position as to the intent of the parties. Extensive discovery has been conducted and has been ongoing since 2013. The Court's finds this unsupported contention unpersuasive in light of the Court's determination that B&B is not legally obligated to indemnify Hiland for Hiland's own negligence.

While Missouri Basin may be contractually obligated to indemnify Hiland in accordance with the terms of their master service contract executed in July 2008 with Hiland, Missouri Basin cannot pass along that contractual obligation to B&B. The terms of the unsigned master service contract limit B&B's indemnification obligation to claims arising out of the performance of the contract with Missouri Basin. The unsigned master service contract makes no mention of the July 2008 master service contract entered into between Hiland and Missouri Basin, or any contractually-imposed liability which Missouri Basin may have assumed therein. Further, it is clear and undisputed that B&B was not a party to the 2008 master service contract. The Court concludes, as

a matter of law, that B&B has no legal obligation to indemnify Missouri Basin for any obligations Missouri Basin may have assumed in its master service contract with Hiland.

IV.     **CONCLUSION**

For the reasons set forth above, B&B Heavy Haul, LLC's motion for partial summary judgment (Docket No. 120) is **GRANTED**.  Hiland Operating LLC's third-party complaint against B&B Heavy Haul, LLC is **DISMISSED** with prejudice.  Missouri Basin Well Service Inc.'s cross-claim against B&B Heavy Haul, LLC is also **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Dated this 10th day of September, 2014.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court